Argued 12 October, decided 26 October, 1903.

## MENDENHALL'S WILL.

[72 Pac. 318, 73 Pac. 1033.]

DISMISSING APPEAL.

1. Irregularities in an appeal from a county court to the circuit court may be reviewed on appeal to the supreme court, but do not afford any ground for dismissing the latter appeal, since they do not pertain to either the jurisdiction or the rules of the last-named court.

SERVICE OF NOTICE OF APPEAL ON ADVERSE PARTIES.

2. Since the amendments of 1899 and 1901 relating to the manner of taking appeals to the supreme court (now embodied in B. & C. Comp. § 549, subd. 1), the notice of appeal need not be served on any adverse parties except those who have appeared.

MOTION TO DISMISS APPEAL — MISSING TESTIMONY.

3. The question whether or not certain testimony taken in the cause in the county court and lost was retaken or supplied, or the irregularity waived in that court, is immaterial on a motion to dismiss the appeal from the circuit court, it appearing from the record that all the testimony that was before the county court at its final hearing on the merits accompanies the transcript to the supreme court.

BURDEN OF PROOF IN PROBATING WILLS.

4. Where the validity of a will is attacked by a direct proceeding after probate in common form, or on ex parte proceedings, the person seeking to maintain the validity of the will has the burden of proving every essential fact, not admitted or waived by the pleadings, necessary to authorize probate in the county court.

PETITION FOR CONTEST OF WILL — NECESSARY ALLEGATIONS.

5. The allegations of a notice of contest of a will must be sufficiently broad and specific to call in question the validity of the will or the competency or sufficiency of the proof of its execution, and should point out with reasonable accuracy the specific points on which reliance will be placed to set aside the probate.

EXAMPLE OF SUFFICIENT NOTICE OF CONTEST.

6. A petition contesting a will, which alleges that the paper admitted to probate as the will of decedent was not decedent's will; "that the same was not signed by her, nor was the same witnessed as by law required, or witnessed at all, in fact; that said paper was never executed as or for a will, and was never intended by said decedent to be her last will"—is sufficient to raise the question whether decedent subscribed the instrument or acknowledged its execution in the presence of the subscribing witnesses, especially where the proponent, in his answer, avers that decedent signed the will in the presence of the witnesses, to whom she thus declared the same to be her will, and that the witnesses, in the presence of the testatrix, at her request, and in the presence of each other, signed as witnesses.

SUFFICIENCY OF EVIDENCE OF EXECUTION OF WILL.

7. The evidence herein shows that decedent neither signed the will in question nor acknowledged its execution in the presence of subscribing witnesses.

EFFECT OF RECITALS IN ATTESTATION CLAUSE.

8. Where the memory of witnesses to a will is at fault in establishing the incidents attending the formal execution thereof, the attestation clause comes to the support of its validity, and the law will presume a due execution from the recitals therein of the requisite facts, but such recital cannot prevail against positive and convincing proof to the contrary.

From Multnomah: ARTHUR L. FRAZER and MELVIN C. GEORGE, Judges, in joint session.

The will of Esther L. Mendenhall having been admitted to probate by the county court of Multnomah County, its validity was called in question, and the probate was revoked by W. M. Cake, then county judge. The executor appealed to the circuit court, where the decision of the county court was affirmed, and the executor again appeals. A motion to dismiss the last appeal was overruled, and on a consideration of the merits the decree was affirmed, both opinions being by Mr. Justice WOLVERTON.

MOTION OVERRULED : AFFIRMED.

ON MOTION TO DISMISS THE APPEAL.

*Mr. Edward Mendenhall* and *Mr. Julius C. Moreland* for the motion.

*Mr. Martin L. Pipes, contra.*

MR. JUSTICE WOLVERTON delivered the opinion.

This cause originated in the county court, was appealed to the circuit court, and now an appeal is sought to be prosecuted to this court. What purported to be the last will and testament of Esther Louise Mendenhall was, upon the petition of Rush Mendenhall, who is nominated as executor therein, admitted to probate by the county court in common form. Subsequently E. and E. R. Mendenhall, the respondents herein, filed objections to the probate thereof, and the following named heirs and legatees, along with the executor, were cited to appear and show cause why the probate of said will should not be revoked, the will set aside and declared invalid, namely, Cyrus J. Mendenhall, E. J. Mendenhall, Hattie Mendenhall, and Lizzie C. Mendenhall. None of the last-named parties appeared, but the contest was carried on wholly between E. and E.

R. Mendenhall, as contestants, on the one side, and Rush Mendenhall, executor, as proponent, on the other. At the hearing the county court set the will aside, and in his attempt to appeal to the circuit court from such decree the proponent, on February 6, 1901, served a notice thereof upon the contestants only, directed to them and their attorney, and reciting "that the said Rush Mendenhall hereby appeals," etc., without designating himself as executor of the last will and testament of the testatrix. There was a motion to dismiss the appeal in the circuit court, which being overruled, the decree of the county court.was affirmed after a hearing upon the merits. The respondents now move to dismiss the appeal to this court, upon the following grounds: (1) That the proponent prosecuted the appeal to the circuit court in his individual, and not in his representative, capacity as executor; (2) that the notice of appeal was not served upon all the heirs and legatees; and (3) that the entire testimony taken at the trial in the county court does not accompany the transcript.

1. The motion challenges the jurisdiction of this court to entertain the appeal (*Corder* v. *Speake*, 37 Or. 105, 51 Pac. 647), but presents no special reason why it has not been regularly perfected in the mode pointed out by statute. The first ground assigned is not of that character, but is directed rather to the merits of the controversy as presented to the circuit court, and should be a matter for our consideration upon a perfected appeal. Whether the question was raised or not by the motion made in the circuit court to dismiss the appeal from the county.court, it could have been so raised, and was a matter for that court to pass upon primarily, whereupon it would become the province of this court to review and revise its adjudication with relation thereto; thus demonstrating that the question is one going to the merits of the controversy, and not

involving the regularity and efficacy of the appeal from the circuit court. So the first ground is not well taken.

2. The second is disposed of by the 1899 amendment of the statute (Laws 1899, pp. 227, 228), in force at the time the appeal to the circuit court was taken. Since the adoption of that amendment, and of another relative to the same subject (Laws 1901, p. 77), an appeal may be taken by serving a notice thereof on such adverse party or parties as have appeared in the action or suit: B. & C. Comp. § 549, subd. 1; *United States Invest. Corp.* v. *Portland Hospital*, 40 Or. 523 (64 Pac. 644). The statute has been literally observed in the present instance.

3. By the third and last ground urged for dismissal the question is presented whether or not certain testimony taken in the cause in the county court and lost was retaken or supplied, or the irregularity waived in that court. As we understand the record, all the testimony accompanies the transcript to this court that was before the county court at its final hearing upon the merits. It is plain, therefore, that the regularity of the appeal from the circuit court is not challenged by the question, and hence we cannot entertain it until we reach the cause upon its merits.            MOTION OVERRULED.

### ON THE MERITS.

For appellant there was a brief over the names of *Schuyler C. Spencer* and *Pipes & Tifft*, with an oral argument by *Mr. Spencer* and *Mr. Martin L. Pipes*.

For respondents there was a brief and an oral argument by *Mr. Julius C. Moreland* and *Mr. Edw. Mendenhall*.

MR. JUSTICE WOLVERTON delivered the opinion.

Esther Louise Mendenhall died March 29, 1898, leaving a writing bearing date November 19, 1897, purporting to be her last will and testament. It nominates the appel-

lant, who was her husband, as executor, giving him all her personal property except certain articles bequeathed to Elizabeth C. Mendenhall, a daughter of her son Elbert J., and the use of her real property during his life; to her sons Edward C. and Elgin R. one dollar each; to her son Cyrus J. it devises one third of her estate at her husband's death; to Elbert J., one third for the use and benefit of himself and family during his life, thereafter to be divided equally between his wife, Harriet, and their issue; and to her said granddaughter, Elizabeth C., the remaining one third. This instrument was admitted to probate by the county court of Multnomah County on the 5th day of May, 1898, and on December 6th following, the respondents filed a petition contesting it. As presented, the writing has subscribed thereto the name of Esther Louise Mendenhall, admittedly her genuine signature, and the names of Ed Dennison and Lizzie B. Dennison as subscribing witnesses. The date, "November 19th," and the words, "Portland, Oregon," appearing beneath the signature of each of these witnesses, are all in the handwriting of the testatrix. The year in which it was executed is indicated by the printed words, "in the year of our Lord, One Thousand, Eight Hundred and," followed by the written words, "Ninety-seven," in the handwriting of Elbert J. Mendenhall, referred to in the testimony as "Bert," who drew the will, using a printed form for the purpose. The attestation clause is all in print, except the name of the testatrix and the word "her," appearing in three places. The single point of controversy is whether the testatrix subscribed the instrument or acknowledged its execution in the presence of the subscribing witnesses; the contestants' contention being that her name was not appended thereto at the time the witnesses signed it, nor until a long time thereafter, and that when it was subscribed by her the witnesses were not present.

4. Preliminary to the consideration of this controversy,

we will examine the petition contesting the will, which is
challenged as to its sufficiency to raise the question in-
volved. It avers, among other things, "that the said paper
admitted to probate as the will of said Esther Louise Men-
denhall, deceased, is not the will of said decedent; that
the same was not signed by her, nor was the same wit-
nessed as by law required, or witnessed at all, in fact; that
said paper was never executed as or for a will, and was
never intended by said decedent to be her last will," etc.
It is argued that the only language at all apt or competent
for presenting the issue is this: "Nor was the same wit-
nessed as by law required, or witnessed at all in fact;"
that the first clause thereof states but a conclusion of law ;
and that the latter raises only the question whether the
instrument had subscribing witnesses to it. The objection
is technical, but, if meritorious, the proponent is entitled
to have the benefit of it. The mode of proceeding in a case
of contest of this nature is aptly developed in *Hubbard* v.
*Hubbard*, 7 Or. 42, 44, where the court say : " It is claimed
by counsel for appellants that where a will has been pro-
bated 'in common form,' or by proceedings wholly *ex parte*,
as in this case, and the validity of the will is attacked
by a direct proceeding, it is incumbent upon the person
seeking to maintain the validity of the will to re-probate
the same *de novo*, by original proof, in the same manner
as if no probate thereof had been had. This proposition
we think, is correct, if the allegations are sufficiently
broad to question the validity of the will, and the com-
petency of the proof as to its execution. In every such
proceeding the *onus probandi* lies upon the party pro-
pounding the will, and he must prove every fact, which is
not waived or admitted by the pleadings, necessary to
authorize its probate in the county court. Whatever may
be the form of the issue as to every essential and contro-
verted fact, he holds the affirmative." "This," says Mr.

Chief Justice THAYER, in *Luper* v. *Werts*, 19 Or. 122, 126 (23 Pac. 850, 852) "seems to be regarded as the proper rule upon the subject, and I believe it to be correct in principle."

5. This language implies that the allegations of the petition for contest must be sufficiently broad and specific to call in question the validity of the will, and the competency and sufficiency of the proof as to its execution. The petition may waive or admit necessary facts and formalities attending the probate, and good practice would suggest that it ought to point out with common perspicuity the specific features upon which reliance is placed for defeating the probate. As to all matters waived or admitted by the pleadings, it would seem that no additional proofs are necessary; but as to those brought in question by the petition the proponent has the burden of proof, and must establish them in the first instance.

6. The statute requires that a will shall be attested by two or more competent witnesses subscribing their names to the instrument in the presence of the testator: B. & C. Comp. § 5548. A subscribing witness must be something more than a person who subscribes his name as a witness to the writing. He must attest the signature of the testator, who must sign the will in his presence, or acknowledge to him by word or act that he had signed it: *Luper* v. *Werts*, 19 Or. 122, (23 Pac. 850). As we said in the case of *Skinner's Will*, 40 Or. 571, 583 (67 Pac. 951, 954): "The attestation, it is true, is not a matter of mere formality in affixing one's name to the will as a witness. There must be an active mentality connected with it. The witness must take cognizance of the signature of the person executing, either by seeing him write, or by his acknowledgment of it in some manner, either expressly or impliedly, so that he can be able to say surely and unequivocally that the signature to the instrument is that of the person exe-

cuting, previously appended. But the attestation of the will does not depend upon the memory of the attesting witness. The act is one, when once performed, which stands as an accomplished fact, and any subsequent failure of the memory of the witness, or willful purpose in suppressing what is known to have transpired, does not change or obliterate it. It may, perchance, stand unsubstantiated after applying the test of legal proof, but, if it once existed, it stands for all time as any other fact." With this idea of the signification of the term "witness," as applied to a will, it is not a wide stretch of the understanding to conclude that the pleader meant, by the averment that the will was not witnessed at all, that the purported signature of the testatrix was not attested by the subscribing witnesses. That the proponent so understood the language is indicated by the averment of his answer, wherein he states that the testatrix "then and there signed her name to the same, with her own hand, in the presence of Lizzie B. Dennison and Ed Dennison, both competent witnesses, to whom and in whose presence she then and there declared the same to be her last will and testament, and that she had signed the same, and that then and there, after her signature, the said Lizzie B. Dennison and Ed Dennison, and each of them, signed her and his name at the bottom of said will in the presence of said testatrix and at her request, and in the presence of each other, and duly attested the said will by their said signatures." We conclude, therefore, that the issue was sufficiently presented by the petition, and especially is it so in view of the answer of the proponent.

7. In July or August, 1897, the testatrix, as shown by the testimony of the executor, sent by him a pencil memorandum of a will, and also a letter, requesting Bert to copy the will and put it in proper form for execution. Bert, who was then living at Buxton, Washington County, complied with the request, using a blank printed form for

the purpose, specifying therein in his own handwriting the several bequests, and filling in the blanks with the requisite data. The blank left for the date of execution was not filled, nor was the residence of the witnesses indicated. In this form the executor carried it to the deceased within two or three weeks, being some time in the month of August. The executor further testifies that on the 19th day of November, 1897, at the noon hour, his wife, having the will as drawn up by Bert in her trunk, said, " I must have it signed, because I don't know what minute I am going to leave you;" that she unlocked the trunk, took the will out, and requested him to accompany her to the kitchen then occupied by the Dennisons, it being in the same building where the testatrix and executor were living, which he did; that she asked the Dennisons if they had a pen and ink, and told them that she wanted them to witness her signature to her will, saying, "I want to sign it in your presence;" that they sat right there, and she signed the will; that he (the executor) was standing right by, looking at her; that the witnesses both signed it, but he thinks the testatrix wrote " Portland "; that after the signing his wife took the will and put it back in her trunk; that it remained there until some three or four hours after her decease, when he obtained the key to the trunk, took it out, examined it, and retained it thereafter in his possession. He employed Elgin R. Mendenhall, called "Al" in the testimony, who is an attorney, to probate the will for him, paying him $50 for his services. Al drew the petition looking to its probate, but declined to swear him to it, whereupon the executor took it to C. A. Reed, who administered the oath, and on May 5th it was admitted to probate upon the testimony of the subscribing witnesses and the executor. The formal testimony of Lizzie B. Dennison, as shown by her affidavit contained in the record, is to the effect that the instrument was signed by her about

three or four months prior to the time of their examination, April 5, 1898; that the said Esther Louise Mendenhall presented a paper to her, and asked her to sign it as a witness, remarking at the time that it was her will; that she (the witness) signed her name thereto, but that she never read the paper or noticed any writing upon it; that she did not know the age of the deceased when she died, but that she was over the age of twenty-one years when she signed the will; that she (the witness) signed in the presence of the deceased and in the presence of the other subscribing witness. Ed Dennison's formal testimony is to the same effect.

The executor deposed as follows : "I was the husband of deceased at the time of her death, and knew her handwriting; that the signature, viz., Esther Louise Mendenhall, to the instrument purporting to be the last will of deceased, which is now shown me, is in the handwriting of my said wife." This proof was reduced to form by the attorney, but was corrected by Judge Northup in the particular whereby it is shown that the testatrix was above the age of twenty-one years when she "signed," or, as said in Ed Dennison's proof, "made," the will. Judge Northup, who was presiding, testifies that he, at the request of the attorney, examined the witnesses orally ; that he must have asked the subscribing witnesses whether Mrs. Mendenhall's name was subscribed to the will at the time they subjoined theirs, and that they answered in the affirmative, although it was not written at the time; that his recollection is that Mrs. Dennison stated that Mrs. Mendenhall did not sit down at all, but was standing in the room during the whole time, and that Dennison made in substance the same statement, but that witness had no distinct memory upon the subject ; that he thought the oral testimony of the executor was in substance as contained in his affidavit or formal proof; and that the taking of his testimony was

suggested by witness because the other witnesses had not said that the signature attached to the will was that of the testatrix at the time of their signing. Lizzie B. Dennison testifies in this proceeding that the testatrix brought the will into their kitchen while they were eating, and handed it to Mr. Dennison; that witness procured a pen and ink from their bedroom for him, and he signed it; that testatrix requested him to sign, and that witness then signed it, also at her request; that she said it was her will; that they signed in her presence and in the presence of each other; that, after they signed, witness gave the will back to her, and she went out; that when she gave the paper to Dennison it was partially folded, and witness did not see her name at all; that she did not pay any attention to the paper; that part of the paper was printed, and that she did not see any written word that she could remember; that she did not read any of the printed matter of the attestation clause: that she could not say whether the clause was on the will or not; that Mrs. Mendenhall did not sign the will in her presence or in the presence of Mr. Dennison, and that she did not testify previously before the county court that testatrix signed in her presence, nor did she testify that Mrs. Mendendall acknowledged to her that the name now appended was her signature; that there was nothing said about her name; that she testified at the former examination at the request either of Al or Rush Mendenhall — probably Al; that Mr. Rush Mendenhall was not in the room when she signed her name to the paper as a witness; that there was no one in the room at the time but her husband, the testatrix, and herself; that the little girl, Lizzie Mendenhall, came in some time after Mrs. Mendenhall went out; that Mrs. Mendenhall came back in the room shortly after, and talked to her about the will, and said she wanted to get it made out and put away before Mr. Mendenhall, the old gentleman, came back;

that she gave no reason for so doing, only that he had been trying to find out if she made it (the will) or not; that witness signed the paper some time before Christmas, three or four months before the old lady died ; that Rush Mendenhall was not in the city at the time, but came back in two or three days or a week; that the words "Portland, Oregon," are neither in her handwriting or her husband's, and she does not remember whether those words were there when she signed, or not, and that she did not remember seeing any signature to the purported will at the time.

Mr. Dennison testifies substantially the same as his wife, except as to matters that took place between Mrs. Dennison and the testatrix after she left the room where they signed the will; that Mrs. Mendenhall said, "'I have got a piece of paper here I want you to sign,' and I says, 'What is it?' and she said it was her will, and she handed it to me, and I says, 'Where shall I sign ?' and she says, 'Right here,' and she pointed out the line where I should sign, and I signed my name. * * I wrote my name, and my wife also ;" that the words "Portland, Oregon," were not there when he signed ; that the testatrix did not have the pen in her hand to write with, and that he wrote his name with the pen, and then handed it to his wife ; that he did not see any writing on the paper, it being folded about half ; that there was not another person in the room except the three when he signed; that he did not read the attestation clause; that he was going to sign on another line, and the testatrix told him not to sign there, because she wanted to sign there herself ; and that he did not see her name where it is signed now.   Elgin R. Mendenhall testifies, in brief, that the first time he saw the alleged will was when he lived on Third Street, in the early part of 1898, either the latter part of January or the early part of February ; that his mother brought it to him ; that the words "November 19th," his mother's signature, and the words "Portland, Oregon,"

appearing twice, were not there, but that the names Ed Dennison and Lizzie B. Dennison were ; that she had prepared another will on letter paper, which was filled out, signed by her, and witnessed ; that the difference between the two instruments was that witness was included in the latter and not in the former ; that she said she would not sign the former because he was not so included ; that his father employed him to probate the pretended will, and gave him $50 for it, but that he had an understanding with him at the same time that he was to pay him in money or deed him property equivalent in value to a one-third interest in his mother's estate, and that Ed was to give the old gentleman a deed to whatever interest he may have in such estate, and that, depending upon this agreement of his father, he procured the will to be probated; that he declined to swear his father to the petition for probate, and that he had it done by Reed ; that he prepared the affidavits for the witnesses and for his father, being the formal proof of the will ; that his father told him that he never saw the testatrix sign the will, but that he knew the signature was in her handwriting ; that his father did not keep his agreement with him to give him money or property equivalent to the third interest in his mother's estate ; that he subsequently proposed making a will by which he intended giving him that amount, which would have been satisfactory to witness, but he ascertained he was going to disinherit Cyrus J., commonly called "Doc," and witness would not assent to that, and thereupon his father declined to do anything, which precipitated the present litigation to defeat the will.

Ed Mendenhall testifies that the first time he saw the purported will his mother's signature was not attached, nor were the words and figures "November 19th," or "Portland, Oregon," but that the witnesses' names were subscribed to the attestation clause ; that this was early in the year 1898 ;

that his mother showed the will to him in the front room, next her bedroom; that she brought it to him, and said that Al was not mentioned, and that she had not signed it, and did not want to do so; that he saw her shortly afterward, and she had prepared a will herself, providing for Al, which she had signed, and which was regularly witnessed; and that, in a conversation relating to the purported will, his father told him that he did not see his mother sign the instrument. This recounts in a brief way the most material evidence in the record relative to the sole question left for our determination, which is one purely of fact: Did the testatrix sign the will in the presence of the attesting witnesses, or acknowledge to them, either expressly or impliedly, that the signature, "Esther Louise Mendenhall," if not subscribed at the time, was hers, previously written? If either act was in reality performed in the manner suggested, which must be determined from the evidence in the record, the will should be admitted to probate; otherwise not.

The executor's testimony as to the execution of the will is proof positive that the testatrix signed the will in the presence of the attesting witnesses, and the attestation clause subscribed by the witnesses asserts as much. Aside from these two circumstances, the testimony in the main has an exactly opposite bearing. The two subscribing witnesses say with emphasis that the testatrix did not write her name to the will at the time, and that the old gentleman was not in the room; that no one but the testatrix and the two witnesses was present, and consequently the executor could not have seen his wife sign the paper. In this testimony they are not discredited by their formal proofs. Again, the two sons, Al and Ed, both testify that their mother showed them the will and discussed its provisions with them after the witnesses had signed, and that their mother's name was not appended at the time. With

them, as with the subscribing witnesses relative to her signing in their presence, there is scarcely any room for mistake. The matters of detail are stated with clearness and precision. Added thereto is another feature. It seems probable, upon an examination of the different signatures, that the ink used by the testatrix is of a slightly different shade from that used by the witnesses, indicating that she did not sign with the same ink. But we do not consider this of great weight, as there is so much liability of mistake about it. These proofs have a direct bearing upon the vital issue as to whether the testatrix signed the will in the presence of the attesting witnesses. Collaterally, both Al and Ed swear that the old gentleman told them he did not see their mother sign the will. This finds strong corroboration in the circumstance that the father's first proof when the instrument was originally presented for probate spoke merely to his knowledge of the identity of her handwriting or signature, without so much as intimating that he saw her sign. Then it is very probable that he made such a contract with Al to induce him to assist in probating the will as Al declares he made. He admits in his testimony that Ed informed him that he had prepared and executed a deed to him such as was contemplated by the agreement, and that he had Reed draw his will providing for Al, but not for Doc, and that he and Al disagreed about that. Beyond this, the old gentleman evinced an active interest relative to the will. Within three or four hours after his wife's death he searched for and found it in her trunk, examined it, and kept it in his pocket from that time on; nor would he let Ed take it into his hands at any time. Other matters might be alluded to, such as the strained relations of the parties concerned, which inferentially give weight to these observations, and militate against the executor's contention. The positive assertion of the executor that he saw his wife sign is unquestionably

overborne by the direct testimony of the subscribing witnesses and his sons Al and Ed. There is not the remotest reason for believing that his testimony outweighs that of the four, while, upon the other hand, every circumstance and consideration gives strength and potency to the contention that she did not so sign in the presence of the witnesses. The attestation clause cannot elucidate this feature of the controversy, as both the subscribing witnesses remember distinctly concerning the subject, and speak positively as to the fact. Neither was the signature of the testatrix affixed before the signing by the witnesses. While the testimony of Mr. and Mrs. Dennison is somewhat indefinite in their assertion that they did not see her signature, in that they did not assert explicitly that the signature was not there, Ed and Al Mendenhall testify directly to the fact that it was not there some time afterward; hence it could not have been there when they signed.

8. Where the memory of witnesses is at fault in establishing a real or necessary incident attending the formal execution of a will, the attestation clause comes to the support of its validity, and the law will presume a due execution from the recitation of the requisite facts therein, or even without it, upon the hypothesis that the requirements of the law have been duly observed: *Skinner's Will*, 40 Or. 571 (67 Pac. 951), *Thompson* v. *Owen*, 174 Ill. 229 (51 N. E. 1046, 45 L. R. A. 682). But it is not effective as against positive and convincing proof to the contrary. The fact that the testatrix declared the instrument to be her will, together with the attestation clause, would have gone far, if possibly it would not have been sufficient, as against the ambiguous statement of the subscribing witnesses, to substantiate a formal execution by an acknowledgment of her signature (*Luper* v. *Werts*, 19 Or. 122, 23 Pac. 850; *Walton* v. *Kendrick*, 122 Mo. 504, 27 S. W. 872, 25 L. R. A.

701), had it not been for the other proofs adduced, showing that the signature could not have been there at the time; and, not being then subscribed, there could by no dexterity of reasoning have been an acknowledgment thereof to the witnesses present. We have not overlooked Judge Northup's testimony; but, while he thinks the Dennisons must have testified that the testatrix acknowledged her signature to them, or he would not have admitted the will to probate, he nevertheless could not say from his memory upon the subject whether such was the case or not. The fact, however, that he thought it was necessary to have the old gentleman called for the purpose of identifying the handwriting of his wife, thereby showing it to be her genuine signature, is a strong circumstance tending to show that they had not sufficiently established a proper attestation without such proof, but that with it a *prima facie* case had been made, and in this view his judgment would appear to be sound. The further testimony adduced upon this trial, however, bears so strongly the other way as to impel us irresistibly to the conclusion that the will was neither signed nor the testatrix's signature acknowledged in the presence of the subscribing witnesses, and therefore that it was not, as a matter of fact, attested as by law required.                    Affirmed.

Decided 3 August, 1903.