Argued November 10, decided November 20, 1913, rehearing denied
January 13, 1914.

# SIMPSON v. DURBIN.*

(136 Pac. 347.)

**Wills—Execution—Attestation.**

1. Evidence *held* to show that the testator duly executed the will
and acknowledged it before the attesting witnesses.

**Wills—Execution—Presumptions.**

2. In case of a holographic will, where it appears to have been
attested and executed in accordance with the requirements of the law,
there is a strong presumption in favor of its validity, notwithstanding
the absence of an attestation clause.

[As to what are olographic and holographic wills, see notes in
52 Am. Dec. 591; 104 Am. St. Rep. 22.]

**Wills—Probate—Contest.**

3. Where a will probated in short form is contested, the proponents
must re-probate the same *de novo* by original proof, but the contest-
ant's petition may waive or admit some of the necessary facts attend-
ing the probate, in which case the proponents need not prove them,
and hence, where the petition contesting a will specifically attacked
it on the ground that it was not properly attested and that it was
executed by reason of the beneficiary's undue influence, the issues of
testamentary capacity and of the execution of the will by the decedent
are waived.

**Wills—Contest—Undue Influence—Burden of Proof.**

4. Where a will was executed and acknowledged in the absence of
the principal beneficiary, the testator at that time managing his own
affairs, the contestants have the burden of proving undue influence.

· [As to presumption of undue influence, see note in 21 Am. St.
Rep. 94. See, also, 31 Am. St. Rep. 670.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 1. Statement by MR. JUSTICE EAKIN.

This is a will contest instituted by J. T. Simpson,
J. G. Wisdom, J. T. Wisdom, Minnie Gould, A. J.
Wisdom, William Wisdom, E. J. Mills, William P.
Mills, Joseph M. Mills, Samuel T. Mills, Sr., Mary J.
Brown, Mary E. Mills, Mandana P. Shriver, Lizzie M.

---

*As to the necessity of witnesses to a holographic will, see note in
14 L. R. A. (N. S.) 968.                                    REPORTER.

Beall, Doctor Smith, Frank Smith, Ira E. Smith, Sarah I. Hamilton, Jannie A. Kirk, Doctor Kimsey, Pierce Kimsey, James Kimsey, Hannah Kimsey, Viola Purtrazer, John Bush, Belle Gaston, M. W. Hunt, J. T. Hunt, Laurance Hunt, Sarah Steeves, Sarah Hunt, Mary Hunt, Helen Hunt, Jeptha Hunt, Ida Pinkston, Robert Ashby, Clyde Ashby, Birdie Canter, Edith Fowler and Virl Dorris, against Sarah A. Durbin, Frank W. Durbin, Sr., Frank W. Durbin, Jr., Leora P. Martin and Frances Smith.

Francis Marion Smith died March 28, 1910, in Salem, Oregon, leaving no lineal descendants. The petitioners and respondents were all next of kin to decedent and were his legal heirs. About April 1, 1910, a paper purporting to be the last will and testament of the decedent was probated *ex parte* in short form in the County Court of Marion County, Oregon. Thereafter, about August 10, 1910, these petitioners commenced a proceeding in the above-mentioned County Court to contest the said will, which proceeding was heard by said court, and the will sustained and admitted to probate; the petition being dismissed. The pretended will is written with pen and ink on a sheet of small note paper and is apparently all, including the name of F. M. Smith signed thereto, in the same handwriting, being in the following words and figures:

"Salem, Oregon, Dec. 9th, 1903.

"This is my only and last will. I gave all my real estate and personal property and money and accounts to my sister, Sarah Durbin, except $100 dollars to Frank W. Durbin for name. Also 100 dollars to Frank Smith for name. Also to Frank Edwards 100 dollars for name. Also Marion Hunt 100 dollars for name, and Frank W. Durbin, Junior, 100 dollars for name; the balance of my brothers and sisters' children to have one dollar a piece, and I appoint my sister,

Sarah Durbin, to administration of my estate without bonds. Subscribe my name:

"F. M. SMITH.

"L. B. HIXON, Witness.

"C. W. YANNKE.

"This will is not to take effect until after my death."

The names "L. B. Hixon" and "C. W. Yannke" are in different handwriting and with different ink from that used in the body of the instrument. AFFIRMED.

For appellants there was a brief over the names of *Messrs. Simpson & Lewis* and *Mr. Frank Holmes,* with oral arguments by *Mr. F. A. Lewis* and *Mr. Holmes.*

For respondents there was a brief over the names of *Mr. John H. McNary, Mr. Charles L. McNary, Mr. Walter L. Spaulding* and *Mr. Carey F. Martin,* with oral arguments by *Mr. John H. McNary* and *Mr. Spaulding.*

MR. JUSTICE EAKIN delivered the opinion of the court.

There are several assignments of error, but they are all answered by the decision of two questions, namely: (1) Did the decedent write the will? and (2) Did he acknowledge to the witnesses that it was his will or an instrument he executed?

1. The witness to the will, Hixon, testified: "That decedent came to his house in East Salem in a buggy. I rode down town with him, got along about the State House, and he asked me 'if I would sign the statement he had written out; what he wanted to do with his property. He said something might happen to him.' That the decedent read the statement over to him and he signed it in his presence in Derby's office." Decedent then went to the stable of C. W. Yannke and said

to him: "Charlie, I have a paper here for you to sign as a witness. Will you sign as a witness?" Yannke took the paper and went into the stable office and signed it. In the light of the description of the relative positions of the witness and the decedent, by this witness and another, there can be no doubt but that Yannke was within the view of decedent when he signed the paper. Decedent was at the door of the office and could see the desk, which was directly opposite the door and not more than eight feet away, and he was within hearing of Yannke. The evidence shows that the witnesses do not pretend to give all that was said by decedent, but, it is certain that there was something said by him to both the witnesses from which they understood that the statement he asked them to witness was a will. McFarlane says that Yannke called him, stating that it was Smith's will, and needed two witnesses; and Hixon heard the will read and knew it was a will. This testimony was given nearly two years after the acts and conversations took place, and witnesses say they do not recall all the circumstances or the words spoken. This fact is certain, decedent had evidently drawn a will. He called it a statement of the disposition of his property. He was a farmer able to be about his business, evidently in usual health. He had in mind the persons he wanted to witness his will, went in his buggy, and got Hixon as one, and passing over Derby, who was convenient, secured Yannke's signature as the other witness. They did sign it as witnesses at decedent's special request and in his presence, after he had exhibited it to them as a paper he wanted them to witness. That was an acknowledgment of it to the witnesses. There is no better evidence of the genuineness of a will than that it is his own handwriting. Hixon said: "He [Smith] asked me if I would sign a statement he had written out." He was not *in*

*extremis,* where great care must be observed in the
formal execution of the will and where the opportunity
is great to impose upon or overreach one weak in body
and mind; and the circumstances proved are con-
vincing that the two witnesses knew this was the
decedent's will and signed it at his request in his
presence as such witnesses thereto.

2. Jarman, Wills, page 105, says: "It may be here
mentioned that, if a will appears on the face of it to
have been executed and attested in accordance with
the requirements of the act, the maxim, '*Omnia prae-
sumuntur rite esse acta,*' applies, unless it is clearly
proved by the attesting witnesses that the will was not
in fact duly executed. But, if the evidence is clear,
the probate will be refused. Even where the docu-
ment is informal (as where there is no attestation
clause or the clause is incomplete), it may be assumed
to have been duly executed (especially if it is a holo-
graph will), although no evidence of its due execution
is forthcoming."

This principle announced by Jarman is followed by
this court in *Mendenhall's Will,* 43 Or. 542 (72 Pac.
318, 73 Pac. 1033), as follows: "Where the memory of
witnesses is at fault in establishing a real or necessary
incident attending the formal execution of the will,
the attestation clause comes to the support of its
validity, and the law will presume a due execution
from the recitations of the requisite facts therein, or
even without it, upon the hypothesis that the require-
ments of law have been duly observed."

And in a holograph will this presumption is par-
ticularly applicable when executed in the manner here
shown and regular on its face: See, also, Schouler,
Wills (2 ed.), §§ 9, 255.

3. Furthermore contestants on this appeal contend
that there is no evidence of the mental capacity of
the decedent nor that he signed the will, but by the
petition they admit these facts. In *Mendenhall's Will,*

43 Or., at page 547 (73 Pac. 1034), this court, quoting from the case of *Hubbard* v. *Hubbard,* 7 Or. 44, says: "It is claimed by counsel for appellants that where a will has been probated 'in common form,' or by proceedings wholly *ex parte,* as in this case, and the validity of the will is attacked by a direct proceeding, it is incumbent upon the person seeking to maintain the validity of the will to re-probate the same *de novo,* by original proof, in the same manner as if no probate thereof had been had. This proposition, we think, is correct, if the allegations are sufficiently broad to question the validity of the will and the competency of the proof as to its execution. In every such proceeding the *onus probandi* lies upon the party propounding the will, and he must prove every fact, which is not waived or admitted by the pleadings, necessary to authorize its probate in the county court. Whatever may be the form of the issue as to every essential and controverted fact, he holds the affirmative." And the court proceeds: "This language implies that the allegations of the petition for contest must be sufficiently broad and specific to call in question the validity of the will and the competency and sufficiency of the proof as to its execution. The petition may waive or admit the necessary facts and formalities attending the probate, and good practice would suggest that it ought to point out with common perspicuity the specific features upon which reliance is placed for defeating the probate. As to all matters waived or admitted by the pleadings, it would seem that no additional proofs are necessary; but, as to those brought in question by the petition, the proponent has the burden of the proof and must establish them in the first instance."

Construing the petition by this definition of the issues, paragraph 5 thereof specifically points to the matters contested, namely: "That the said writing is

not now nor never was the last will or testament of the said Francis Marion Smith, deceased, * * nor did either of said alleged witnesses, to wit, L. B. Hixon and C. W. Yannke, sign the alleged instrument in the presence of the said alleged testator, Francis Marion Smith, or in the presence of each other, or at his request, nor did he sign the alleged writing in the presence of said alleged witnesses, nor did they sign it at his request, nor was there any sufficient or competent or other proof thereof before the said court at the time of said alleged probate of said pretended will." Subdivision 8 thereof, at least by recital, admits the execution and signing of the will: "That at the time of the execution of said pretended will by the said Francis Marion Smith he was of the age of 75 years or thereabouts; that he was an unmarried man, always having lived a bachelor and susceptible to the influence of his sister, Sarah A. Durbin; that the said Sarah A. Durbin by means of persuasions and wrongful and undue influence and by means of constraint which the said Francis Marion Smith was unable to resist induced the said Francis Marion Smith to make the said writing, purporting to be his will. * * " Thus the issue as to the testamentary capacity of the decedent and of his writing and signing the instrument is waived by the petitioners, having tendered specific issues in relation thereto.

4. The circumstance of the execution of the will as above recited *prima facie* discloses a want of undue influence, and the burden to establish undue influence is upon the contestants. Schouler, Wills (2 ed.), Section 239, says: "The burden of proving fraud or force in the procurement of a will, unlike the simple issue of testamentary capacity, lies upon those who contest the instrument, and anything which imputes heinous misconduct of the party concerned and interested in its execution ought to be fairly established by a pre-

ponderance of the proof. As to undue influence, in the usual and less offensive sense, the burden of proving affirmatively that it operated upon the will in question lies still on the party who alleges it, either by direct evidence or proof of circumstances": See, also, Schouler, Wills and Administration, §§ 170, 239. And no evidence was offered upon this question.

Therefore, we conclude that the will was duly executed, properly witnessed, and was entitled to probate; and the decree of the Circuit Court is affirmed.

AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BEAN concur.

MR. CHIEF JUSTICE McBRIDE and MR. JUSTICE RAMSEY not sitting.