Argued at Pendleton May 4, affirmed June 8, 1926.

# In Re Estate of ELIZABETH HEAVERNE.
# ANDREW J. HEAVERNE *v.* J. A. BURLEIGH
## ET AL.

### (246 Pac. 720.)

**Wills — Contradictory Statements in Illiterate Testatrix's Affidavits for Pension Held not to Tend to Disprove Testamentary Capacity.**

1. Contradictory statements about family and past life, made by illiterate testatrix in affidavits, in form of questionnaire, to secure widow's pension, *held* not to tend to disprove testamentary capacity.

**Wills.**

2. Testimony that testatrix had said some people had bothered her about making a will does not tend to prove undue influence.

**Wills.**

3. Will leaving property to grandchildren to exclusion of their father, testatrix's son, who had neglected them, *held* not to indicate undue influence or incapacity.

**Wills.**

4. Will is not required to be read in presence of witnesses thereto.

**Wills—Attorney's Asking Testatrix if Document was Her Last Will and Testament is not Evidence of Undue Influence or Testamentary Incapacity.**

5. That attorney preparing will formally asked testatrix if it was her last will and testament, though not required, is not evidence of undue influence or testamentary incapacity.

**Wills—Recital in Will of Sound Mind and Freedom from Duress Held not Badge of Fraud or Undue Influence.**

6. Recital in will "of sound and disposing mind and memory * * and not acting under duress, menace, fraud, or undue influence of any person," *held* not badge of fraud or undue influence.

**Wills.**

7. That attorney preparing will was named executor is not evidence of undue influence.

---

3. See 28 R. C. L. 149.
4. See 28 R. C. L. 125.

**Wills—Giving Will to Executor to Keep and not Tell Anyone of It Held not Evidence of Undue Influence.**

**8.** For testatrix to give will to executor for safekeeping, with charge to tell no one that she had made it, is not evidence of undue influences.

**Wills—Will Held Signed by Testatrix and not by Another Holding and Guiding Her Hand (§§ 10095, 10096, Or. L.).**

**9.** Will *held* signed by testatrix, within Section 10095, Or. L., and not by another, within Section 10096, so as to require him to subscribe his name as witness, he having merely given physical assistance by holding and guiding her hand.

---

Executors and Administrators, 23 C. J., p. 1069, n. 35.

Wills, 40 Cyc., p. 997, n. 38, p. 1023, n. 23, 29, p. 1097, n. 57, p. 1098, n. 60, p. 1102, n. 96, p. 1104, n. 7, 9, p. 1119, n. 30, p. 1165, n. 87, p. 1167, n. 94, p. 1170, n. 25 New.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

This is a will contest. Elizabeth Heaverne died about July 24, 1924, at Joseph, Wallowa County, Oregon, leaving an estate in that county or personal and real property of probable value of $12,000. She left a last will and testament dated April 7, 1924. Two children survive her; Mary McGarry, to whom she bequeathed $1 and A. J. Heaverne, a son, to whom she bequeathed $250. The residue of her estate she bequeathed and devised to her grandchildren, the children of the said A. J. Heaverne and his divorced wife, Rosita Heaverne. All of said children are minors. Mary McGarry is the daughter of the testatrix and her first husband and is upward of fifty years of age. She is and has been for many years a patient in the State Hospital for the insane. A. J. Heaverne is forty-two years of age. He and his former wife, the said Rosita, made their home with his mother, the testatrix, during all their mar-

---

9. What amounts to signature by testator, see note in **L. R. A.** 1915D, 902. See, also, 28 **R. C. L.** 117.

ried life, and said children were born and lived at the home of their grandparents, the said testatrix and her husband Michael Heaverne, who died several years prior to the death of his wife, the testatrix. The contest is based upon three grounds, namely: First, testamentary incapacity; second, undue influence; third, that the will was not legally executed.

                                        AFFIRMED.

For appellant there was a brief over the name of *Mr. A. Fairchilds,* with an oral argument by *Mr. D. W. Sheahan.*

For respondents there was a brief over the name of *Mr. Daniel Boyd,* with an oral argument by *Mr. Sylvester H. Burleigh.*

COSHOW, J.—A careful reading of the testimony leaves no doubt in our mind that the testatrix had sufficient mental capacity to make a will at the time her will was executed. In support of the will some twenty-six witnesses were produced by the contestee, J. A. Burleigh, who was named executor in the will and was thereafter duly appointed and qualified as such. All of these witnesses were acquainted with the testatrix during her lifetime and most of them had known her for many years. They had known her intimately and without any exception testified that she was sane and never displayed any evidence or indication of insanity. The contestant, her son Andrew J. Heaverne, himself, would not testify that his mother was not of sound mind. Giving to his evidence the most favorable construction in his behalf, it would tend to prove that when his mother became excited or was worried she did not know fully

what she was doing. He did not pretend that she
was excited or worried at the time she dictated or
executed the will. His own witness, John Blevens,
testified that he had known her for a number of
years and was sent for by her while she was confined
to her bed for the purpose of discussing with him
some matters. He seemed to be an intimate friend
not only of Mrs. Heaverne, the testatrix, but also of
her son Andrew J. His visit was a few days before
the will in question was executed. His testimony
regarding the mental capacity of the decedent was as
follows:

"Q. You could not see anything wrong with Mrs.
Elizabeth Heaverne's mind that day, could you?
"A. Absolutely not.
"Q. Rational was she?
"A. Fairly."

1. The contestant relied very largely upon some
affidavits made by the testatrix a few years prior
to her death in which she made contradictory state-
ments about her family and past life. These affi-
davits were framed for the purpose of securing a
pension as the widow of her deceased husband,
Michael Heaverne. The decedent was an illiterate
woman. She could neither read nor write. The affi-
davits were in the form of a questionnaire; her state-
ments written down by others and read to her.
Those affidavits were not competent testimony as to
her sanity. They do not tend to prove that she was
insane or incapable of making a will. Nearly all
of the witnesses testified that she was a woman of
strong mentality, bright and sensible. They further
testified that no change was observed by them in her
mental condition during the several months just

prior to her death and when she was physically well.

2, 3. There is no competent evidence which tends to prove that she was influenced by anyone to make the will as it is. The only evidence introduced upon which an argument can be based that she was in fluenced at all was hearsay and to the effect that she had said some people had bothered her about making a will. There is no evidence that anyone influenced her to make the will as it is or as to the provisions she incorporated in the will. The contents of the will itself do not indicate either that she was unduly influenced by anyone or that she was incapable of disposing of her property. There was very strong evidence to the effect that her son had neglected his five little children. He went away from his home while his mother was on her deathbed. She had fallen several months before and injured her hip, probably fractured it. Her son Andrew had secured a divorce from his wife and admitted while a witness in his own behalf that he had stipulated as a part of the settlement of their property rights that his divorced wife should continue to make her home with his mother, where they had lived during all of their married life, and that he would pay the sum of $40 per month towards the support of their five little children. During the winter prior to the death of the testatrix he had driven his former wife from his mother's home without providing any place for her or the children to live. He had failed to keep up the payment of alimony. His former wife and the children were objects of charity for a little while. His mother had his divorced wife and the little ones come back to her home. This incensed him and he left and did not return until after his mother's

death. His relations, before he left his home at Joseph, Wallowa County, Oregon, with another woman was the cause of gossip. His mother was attached to the children, who were all her grandchildren and all of whom had lived with her all their lives. Under those conditions the disposition she made of her property would seem to be the natural result of her affection and indicate that she was exercising her own will free from any influence except such natural affection. Her will provides for a guardian for the children and the preservation of their interests until they attain their majority. The contents of the will carry the conviction that her mind was clear when she dictated it and that her chief concern was the welfare of the little children, who doubtless were as near and dear to her as her own children.

4-6. It was not necessary for the attorney assisting the testatrix to read the will in the presence of the witnesses thereto. The statute does not require it. Most testators desire to have the contents of their will remain unknown until it is presented for probate. Nor is any evidence of undue influence or testamentary incapacity shown because the attorney formally asked the testatrix if that document was her last will and testament. In some jurisdictions this formality is required. It is not required in this state but is generally practiced by careful attorneys. It is not evidence of undue influence. The recital in the will itself that the testatrix was "of sound and disposing mind and memory, * * and not acting under duress, menace, fraud, or undue influence of any person whomsoever," is not of itself a badge of fraud or undue influence. It is a formal introduc-

tion to a will very generally used by competent attorneys. The case of *Greenwood* v. *Cline*, 7 Or. 17, is based upon very different facts. It is true that in page 28 of the opinion in the Greenwood case similar expressions in the will under consideration were held to be unusual and extraordinary. However that may be in 1879, when that opinion was framed, it cannot be so considered now. The form of the will under consideration is very common and generally in use.

7. It is not evidence of undue influence that the attorney who prepared the will was made executor. There is no pretense that he is not competent and no way in which he can derive any benefit from serving as such executor, other than the compensation fixed by statute. Doubtless the burden of the office will exceed the compensation that he will receive. He is required under the law to give security for his conduct as such executor and there is no provision in the will whereby he could honestly receive other than such compensation as the court shall allow. We cannot presume that he will do otherwise than faithfully and honestly execute the will.

8. The fact that the testatrix gave to her executor the will for safekeeping and charged him not to inform anyone that she had made the will is not evidence of undue influence but, on the contrary, is evidence of good judgment and sound mind. As a rule the testator does not make known the contents of a will and places the will for safekeeping where it cannot fall into the hands of improper parties. The testatrix in this case would have brought unlimited trouble upon herself by having revealed that she had made a will. Her comfort and peace required

that that matter be confidential. Her executor would have been guilty of a gross breach of ethics to have revealed the contents of that will to anyone, even though the testatrix had not enjoined secrecy upon him.

9. The will was executed by the testatrix holding a pen in her hand and her hand being held and guided by Mr. Burleigh, who prepared the will at her request. It is contended by the contestant that this was not a compliance with the statute of this state regarding the execution of wills.

The manner of executing a will as well as the right to dispose of property by will is controlled by the legislature. In considering the manner of the execution of a will, it is not the intention of the testator that is under consideration but the act of the legislature. It is the duty of the court to follow the provisions of the statute in determining whether or not a will has been legally executed: 40 Cyc. 1102, § c.; *Mendenhall's Will*, 43 Or. 542 (72 Pac. 318, 73 Pac. 1033); *Re Noyes' Estate*, 40 Mont. 178 (105 Pac. 1013). Our statute provides:

"Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator." Or. L., § 10095.

"Every person who shall sign the testator's name to any will by his direction shall subscribe his own name as a witness to such will, and state that he subscribed the testator's name at his request." Or. L., § 10096.

The making of a mark or other symbol as and for the signature of a testator is a compliance with these sections of the statute: 40 Cyc. 1102, § c.; Or. L.,

§ 2400; *Moreland* v. *Brady*, 8 Or. 303, 312 (34 Am. Rep. 581). The fact that the testatrix was assisted in affixing her signature to the will by her attorney, Mr. Burleigh, holding her hand and helping to guide the pen does not prevent the signature from being hers. She thereby clearly evinced her intention to sign the will. The characters thereby subscribed to the will was as much her signature as though she had written her name without assistance. The only assistance given her in that matter was physical. Her mind was not under the control of Mr. Burleigh or any other person. The will had been read to her a few moments before she signed it. Two witnesses were present at that time who subscribed their names to the will as witnesses at the request of the testatrix. She having subscribed her name with the assistance of Mr. Burleigh, it was not necessary for Mr. Burleigh to certify that he had written her name at her request as prescribed in Section 10096, Or. L. The act of affixing the signature was that of the testatrix: 40 Cyc. 1104, § d; 1 Schouler on Wills, p. 555, § 481; *In re Kearney's Will*, 69 App. Div. 481 (74 N. Y. Supp. 1045), cited by the contestant; *Watson* v. *Pipes*, 32 Miss. 451, 465. The last case cited is very similar, so far as the manner of executing the will is concerned, to the instant case: *In re Miller's Estate*, 37 Mont. 545 (97 Pac. 935); Succession of Bradford, 124 La. 44 (49 South. 972, 18 Ann. Cas. 766, and note subjoined); *Sheehan* v. *Kearney*, 82 Miss. 688 (21 South. 41, 35 L. R. A. 102, and note subjoined); 28 R. C. L., 117, Section 69; 30 Am. & Eng. Ency. of Law (2 ed.) 585, note 10.

The decree is affirmed. Neither party will recover costs or disbursements in this court.     Affirmed.