Argued April 6, affirmed May 31, 1927.

IN THE MATTER OF THE WILL OF ROBERT CARR.
JOHN CARR *v.* CATHERINE B. RYAN, EXECU-
TRIX.

(256 Pac. 390.)

**Wills—Proponent of Will has Burden of Showing Testamentary Capacity.**

1.   The burden of proof rests on the proponent of a will to show that the testator had testamentary capacity when he executed his will.

**Wills—Contestant of Will has Burden of Proving Undue Influence.**

2.   The burden of proving undue influence rests on the contestant of a will.

**Wills—Testator, Having Knowledge of Property, and Knowing How He Wished to Dispose of It, Held to have Testamentary Capacity, Though Physically Feeble.**

3.   Testator, having knowledge of his property and understanding the nature of his actions in executing his will, and knowing how he wished to dispose of his property, *held* to have sufficient testamentary capacity, though aged, ill and physically very feeble.

**Wills—Every Testator is Presumed Sane Until Contrary is Shown.**

4.   There is a presumption in favor of the sanity of every testator.

**Wills—In Determining Testamentary Capacity, Testimony of Subscribing Witnesses is Entitled to Great Weight.**

5.   In determining the mental capacity of the testator, great weight is to be given to the testimony of the subscribing witnesses, who had an opportunity to observe him at the time the will was executed.

**Wills—To Set Aside Will for Undue Influence, It must be Clearly Proved That Will is not Testator's, but is in Effect That of Procuring Parties.**

6.   To set aside will for undue influence, mere suspicion of undue influence is not sufficient, and it must be clearly shown that the influence was actually exercised, so that the resulting will was not

---

1.   Burden of proof in will contest, see note in **Ann. Cas. 1914C,** 535.

2.   See 28 **R. C. L.** 144.

3.   Testamentary capacity as affected by old age, see notes in 27 **L. R. A. (N. S.)** 25; **L. R. A.** 1915A, 450. See, also, 28 **R. C. L.** 94.

5.   Weight of testimony of subscribing witness against competency of testator, see note in 6 **L. R. A. (N. S.)** 575.

only directly caused by the undue influence, but was not the testator's own will, being in effect that of the procuring parties.

**Wills—Friendly Advice or Influence is not "Undue Influence," Unless Actually Destroying Testator's Free Agency.**

7. Friendly advice. or influence, arising from gratitude, affection or esteem, cannot be "undue influence," unless it actually destroys the free agency of the testator at the time the will is executed.

Wills, 40 **Cyc.**, p. 1004, n. 4, p. 1008, n. 16, 18, p. 1010, n. 30, p. 1021 n. 12, p. 1023, n. 29, p. 1035, n. 29, p. 1036, n. 31, p. 1144, n. 53, p. 1145, n. 54, p. 1146, n. 61, p. 1147, n. 64, p. 1150, n. 91, p. 1164, n. 80, p. 1165, n. 87.

From Multnomah: GEORGE TAZWELL, Judge.

Department 1.

Robert Carr resided alone in Portland, Oregon, for several years. He was a reticent man. During the year 1923 he was in poor health and afflicted with cancer of the stomach. Mrs. Catherine B. Ryan was a daughter of an old friend of Robert Carr and often visited him at his cabin in Portland and administered to his wants during the autumn of 1923. About the last of December, 1923, Mrs. Ryan went to the home of Robert Carr and took him to her home near Multnomah Station. The old gentleman was soon after confined to his bed a large part of the time, and died testate, in Multnomah County, on the fifteenth day of February, 1924.

Robert Carr, deceased, left an estate in Multnomah County. On February 18, 1924, an order was made by the Circuit Court of the State of Oregon for Multnomah County, admitting to probate in common form the last will and testament executed by Robert Carr, deceased, on February 1, 1924.

John Carr is the only son and heir of the deceased. He resided in Portland, Oregon, with his family some little distance from his father. On May 3, 1924, John Carr filed a petition contesting the last will and testament of the deceased, on the

ground that the testator at the time of the execution of the will was of unsound mind, and without testamentary capacity, and on the further ground that the executrix, Catherine B. Ryan and Cornelius. J. Ryan, her husband, and Hugh Ryan, her son, exerted undue influence upon Robert Carr and caused him to execute the will. The executrix filed an answer and petition for probate of the last will and testament of the deceased in solemn form. A reply was filed by the contestant, and the contest was heard. On July 30, 1924, the Circuit Court passed a decree admitting the last will and testament to probate in solemn form. The Circuit Court found that the testator, at the time of the execution of the will, was of sound and disposing mind and memory and capable by last will and testament of disposing of his estate. The court further found that neither Catherine B. Ryan, the executrix, C. J. Ryan nor Hugh Ryan exercised any undue influence, fraud or misrepresentation upon the deceased, and that deceased executed his last will and testament freely and voluntarily. The contestant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Richards & Richards,* with an oral argument by *Mr. Oren Richards.*

For respondent there was a brief over the name of *Mr. John J. Beckman,* with an oral argument by *Mr. J. P. Kavanaugh.*

BEAN, J.—It appears from the record that Robert Carr, the deceased, and his wife, the mother of John Carr, the contestant, were divorced about 1912. At that time John Carr, the contestant, the son and Margaret Carr, a daughter, since deceased, went to

live with the mother. After the mother's death, Margaret Carr returned and lived for a time with her father while she was teaching school. John Carr, the contestant, visited his father occasionally and his father visited John Carr's family at times. When Robert Carr's health declined in 1923, for some reason, either the distance between the home of Robert Carr and his son's residence, some three fourths of a mile, or for some other reason, John Carr was not so situated as to give his father the attention and care that he needed in his sickness and declining years. It is in evidence that John Carr and his wife invited the old gentleman to come and live with them, but he did not accept the invitation.

John Carr never heard of Mrs. Ryan prior to November, 1923, and for some two or three weeks did not know that his father had gone to live with the Ryans. Mrs. Ryan telephoned three or four times to the car barns, which were the headquarters of John Carr in his work. He was often out on the line.

When John Carr answered one of the telephone calls, Mrs. Ryan told him that his father was at her house and was a very sick man and desired to see him. Thereafter John Carr, with his wife, went to the home of the Ryans and saw his father, who was sick and confined to his bed most of the time. He afterward visited his father several times. On January 3d, Robert Carr was able to go with Mrs. Ryan to consult Dr. John L. Loomis at his office in Portland. Afterward Dr. Loomis visited him at the Ryan home, but later became ill and Dr. William A. Shea was called to attend Mr. Carr. Dr. Shea began attending the deceased January 22, 1924, and attended him until he died. Four or five days elapsed between the first and second visits, then two

121 Or.—37

days elapsed; after that Dr. Shea saw Mr. Carr every day and sometimes oftener. Dr. Shea called Dr. Ernest· F. Tucker into consultation· about January 29th. The two physicians examined the patient together and the diagnosis of cancer of the stomach was confirmed, and it was decided that all that could be done was to endeavor to make the patient comfortable.

A nurse, Mrs. Elsie Venetor, was called to attend Mr. Carr on February 7, 1924, and attended him until the 11th of that month. Immediately after Lenora Binns, another nurse, came to attend the sick man and remained with him until he died.

On January 28th Mr. Carr sent for Mr. John J. Beckman, an attorney of Portland who had been attorney for the administrator of the estate of Margaret, the daughter, and also connected with the estate of the mother, and had done business for Mr. Carr, to come to the Ryan home to draw his will. Mr. Beckman was not acquainted with the Ryans prior to that time. After a general conversation with Mr. Carr he obtained from him the data from which to draw a will, and returned to his office and wrote a will and returned to the Carr home where it was executed. Mr. Carr sent for Mr. John J. McGreal, a business man of Portland, and Mrs. Bertha E. Richards, a neighbor, to come to the Ryan residence and attest the will. All of the information received by Mr. Beckman for the preparation of the will, as he testifies, was given him by Mr. Carr personally. The testator described his property and interest to the attorney and mentioned his family relations. He gave the attorney all the information concerning the several devises and bequests contained in the will.

On the 31st of January, 1924, Mr. Carr again had Mr. Beckman called to change certain provisions of

the will.   Mr. Beckman came to the Ryan residence
and obtained the information and returned to his
office and drew the last will and testament for Robert
Carr and went to the Ryan residence, where the'same
witnesses were called to witness the will, and it was
executed by Robert Carr on February 1, 1924.   Both
of the witnesses to the will were acquainted with the
testator before the execution of the document.   They
appeared to have no interest in the matter.   Mrs.
Richards was formerly a court reporter.   She often
went to the Ryan home to see Mr. Carr.   Mr. Beck-
man, the attorney, was acquainted with him for sev-
eral years.   Each of these persons testified, as wit-
nesses upon the hearing in this case, to the effect
that Mr. Robert Carr, at the time he executed the two
wills, although physically very feeble, was of sound
and normal mind and understood the nature of the
business in which he was engaged at that time.

The attending physicians who were especially
skilled in the diagnosis and treatment of Mr. Carr's
disease, testified to the effect that at the time of the
execution of the will the deceased was of sound mind
and knew what he was doing; that his mind was nor-
mal.   A detail of the testimony would not be benefi-
cial.

Robert Carr by his last will made several small be-
quests to charitable institutions.   He bequeathed to
his son John Carr the sum of $100 and devised all
the testator's interest, which was one half or more,
in about eighty-one acres of land, known as the Hol-
brook farm, the value of which does not appear.   He
devised two lots with a cabin, appraised at $300,
to Mrs. Catherine B. Ryan.   He made provision for
the expenditure of $1,000 for the education of Hugh
Ryan, her son, under certain conditions.

1, 2. Two questions are involved in this contest: (1) the testamentary capacity of the testator; (2) undue influence. The burden of proof rests upon the proponent of the will to show that the testator had testamentary capacity at the time he executed his last will and testament: *Pickett's Will*, 49 Or. 127 (89 Pac. 377); *Holman's Will*, 42 Or. 345, 357 (70 Pac. 908); *Mendenhall's Will*, 43 Or. 542 (72 Pac. 318, 73 Pac. 1033); *In re Sturtevant's Estate*, 92 Or. 269, 276 (178 Pac. 192, 180 Pac. 595). As to proof of undue influence, the burden rests upon the contestant: *In re Sturtevant's Estate*, 92 Or. 269, 276, 277 (178 Pac. 192, 180 Pac. 595); *Simpson* v. *Durbin*, 68 Or. 518, 524 (136 Pac. 347).

3, 4. It is quite well settled in this state as to testamentary capacity, that if a testator, at the time he executes his last will, understands the business in which he is engaged and has a knowledge of his property, and how he wishes to dispose of it among those entitled to his bounty, he shows sufficient testamentary capacity, notwithstanding he may be advanced in age, sick, debilitated in body or in extreme distress: *Ame's Will*, 40 Or. 495, 504 (67 Pac. 737). See, also, *In re Sturtevant's Estate*, 92 Or. 269, 282 (178 Pac. 192, 180 Pac. 595); *Collins* v. *Long*, 95 Or. 66 (8 A. L. R. 1370, 186 Pac. 1038); *In re Diggins' Estate*, 76 Or. 341, 345 (149 Pac. 73); *Wade* v. *Northup*, 70 Or. 569, 578 (140 Pac. 451). Although such burden rests upon the proponent, there is a presumption in favor of the sanity of every testator: *Chrisman* v. *Chrisman*, 16 Or. 129 (18 Pac. 6); *Schindler* v. *Parzoo*, 52 Or. 452, 456 (97 Pac. 755); *Heirs of Clark* v. *Ellis*, 9 Or. 129, 142; 1 Alexander on Wills, § 396, p. 535.

5. In determining the mental capacity of the testator at the time of making the will great weight is to

be given to the testimony of the subscribing witnesses. They have the opportunity to observe the mental condition and all the surrounding circumstances at the time of the execution of the will: *Clark's Heirs* v. *Ellis,* 9 Or. 128; *Chrisman* v. *Chrisman,* 16 Or. 127, 138 (18 Pac. 6); *Pickett's Will,* 49 Or. 127, 150 (89 Pac. 377); *In re Sturtevant's Estate,* 92 Or. 286 (178 Pac. 192, 180 Pac. 595); *Shreiner* v. *Shreiner,* 178 Pa. St. 57 (35 Atl. 974); 1 Alexander on Wills, § 327, p. 438.

As we view it a large preponderance of the testimony shows that Robert Carr at the time he executed the will thoroughly understood the matter in which he was engaged and had knowledge of his property, and knowledge of those who might claim to be entitled to his bounty, and well knew what he was doing and had sufficient testamentary capacity to execute his will.

6. In order to show undue influence sufficient to set aside a will, it must be shown that the influence was such as to overcome the free volition or conscious judgment of the testator, and to substitute the wicked purpose of another instead, and it must be the efficient cause without which the disposition would not have been made: *In re Diggins' Estate,* 76 Or. 341, 346 (149 Pac. 73); *In re Darst,* 34 Or. 58, 65 (54 Pac. 947); *In re Turner's Will,* 51 Or. 8 (93 Pac. 461).

It is not enough to show that the parties accused had an opportunity to exercise influence but it must appear that the influence was actually exercised and that it was exerted to such an extent that the resulting will was not that of the testator, but that of the party or parties procuring its execution. Mere suspicion of undue influence is not sufficient: *Rice* v. *Rice,* 95 Or. 559, 563 (188 Pac. 181); *In re Sturte-*

*vant's Estate,* 92 Or. 296, 300 (178 Pac. 192, 180 Pac. 595); *Turner's Will,* 51 Or. 8 (93 Pac. 461).

7. Friendly advice or influence arising from gratitude, affection or esteem is not undue influence, nor can it become such unless it destroys the free agency of the testator at the time the instrument is executed: *Estate of Allen,* 116 Or. 467, 499 (241 Pac. 996).

After a careful reading and consideration of the testimony in the case we are convinced that contestant has failed to show that any undue influence was exercised over the testator and that the will in question is the free and voluntary last will and testament of Robert Carr.

We affirm the judgment of the trial court, provided that neither party will recover costs in either court.

AFFIRMED.

BURNETT, C. J., and COSHOW and BROWN, JJ., concur.