Argued September 14; affirmed October 13, 1943

# McGREAL ET AL. *v.* CULHANE ET AL.

## (141 P. (2d) 828)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY and LUSK, Associate Justices.

*John D. Williams* and *Paul C. King*, both of Portland (John D. Williams, Stott & Gooding, and Paul C. King, all of Portland, on the brief) for plaintiffs and for Thomas J. Barrett, defendant and appellant.

*Joseph Van Hoomissen*, of Portland, for defendants and respondents.

BELT, J. This is an appeal from a decree of the circuit court, probate department, sustaining the will of Daniel Barrett, deceased, which was executed on May 10, 1940, two weeks prior to his death. The sole question is whether the testator, at the time the will was executed, had sufficient mental capacity to make a will.

The will was probated in common form in June, 1940, and Thomas J. Barrett, a nephew of the testator, who is now one of the contestants and appellants herein, was appointed, pursuant to his petition, administrator of the estate. Barrett served as administrator for about one year until, in June, 1941, this proceeding to set aside the will was commenced. He thereupon resigned

and, in the proceedings contesting the will, filed an answer admitting that his uncle Daniel Barrett did not have mental capacity to make a will on May 10, 1940. Barrett might well be designated as the leading spirit in this contest. The other appellant is Minnie McGreal, a niece of testator, who resides in Ireland.

The testator, Daniel Barrett, a bachelor aged 76 years, died in St. Vincent's hospital at Portland, Oregon, as a result of an infection of the urinary tract, kidneys, and bladder, leaving surviving him his brother Ned in Ireland and numerous nieces and nephews. He had been troubled with this disease for a number of years having undergone a prostatectomy at the same hospital in 1936.

Under the terms of the will nominal bequests were made to the surviving children of the testator's brothers and sisters, the residue of the estate being devised and bequeathed, share and share alike, to the "surviving family of my late uncle, Daniel Culhane, of Rice County, Minnesota." The estate had an appraised valuation of $9,592.39.

Daniel Barrett was born in Ireland and came to this country when he was a young man about 20 years of age—broke and without friends. His uncle, Daniel Culhane, took the young man into his home and supported him for approximately one year until young Barrett left for the West. Daniel Culhane had been dead for 38 years prior to the execution of the will, but it seems that the kindness bestowed upon the testator when a young man was not forgotten. Testator knew that his uncle had long predeceased him but he wanted to be good to his surviving children, some of whose names he did not remember. Testator was under the impression that his other relative "did not give a damn for him" and neglected him in his old age.

In 1930 testator made a will devising and bequeath-
ing all his property to Thomas Barrett, a son of his
brother Thomas Barrett who resided in Ireland. At
this time, testator apparently admired his nephew very
much as he liked to associate with him and talk about
the folks back home. Such association, however, was
not of an intimate nature, as testator had never been
in Tom's home. Nor had he seen but one of his four
children. In 1935 testator made a trip to Ireland for
the purpose of visiting his many relatives there, re-
turning in December of that year. In 1936, testator
made a second will, bequeathing to his niece, Minnie P.
McGreal, a daughter of his deceased sister Margaret, in
Ireland, the sum of $4,307. The remainder of his estate
consisting of an 80-acre farm in Yamhill county was
devised to his nephew, Tom Barrett. Mr. Joseph Van
Hoomissen prepared these wills and signed as subscrib-
ing witness thereto.

Mr. Van Hoomissen, who practices his profession in
the city of Portland, was testator's trusted lawyer
throughout the years. He had also acted as attorney in
the administration of the estate of testator's sister
Kate, who died in 1929. Testator was appointed admin-
istrator of that estate. It is not surprising, therefore,
that testator went to the same lawyer on May 10, 1940,
to have the will in question prepared. Testator, who had
not seen Van Hoomissen since 1936, went to his office
on the third floor of the Dekum building, unaccom-
panied and without appointment, for the specific pur-
pose of making his last will and testament. The will
was executed in the presence of Van Hoomissen and
his secretary, Julia Sohler, who acted as subscribing
witness thereto. Before signing the instrument, testator
read it over and said that was the way he wanted it.
There was some discussion about designating the bene-

ficiaries, as testator was unable to name all the surviving children of his uncle Daniel Culhane. It was at the suggestion of the testator that the beneficiaries were designated as the "surviving family" of his uncle. Mr. Van Hoomissen said that testator told him to "put it in that way" and that he did so "really against his best judgment" and "contrary to his advice." Van Hoomissen testified that Daniel Barrett was a strong-willed man and that there was no use to argue with him when he made up his mind.

No question is raised about the sufficiency of the designation of the beneficiaries. Modern authorities hold with substantial unanimity that a devise to a "family" of a person is sufficiently definite and certain to be valid: Page on Wills (9th ed.) § 1029. It may also be said at this juncture that the mere fact that testator could not remember the names of the surviving members of Culhane's family, whom he had not seen for many years, does not, in itself, speak of testamentary incapacity: *Havens v. Mason,* 78 Conn. 410, 62 A. 615, 3 L. R. A. (N. S.) 172.

Van Hoomissen, who is a reputable lawyer, and his secretary, Miss Sohler, both testified positively that Daniel Barrett, at the time of the execution of the will, was of sound mind and understood the business in which he was engaged. The testimony of these witnesses is entitled to great weight when aided by the presumption of sanity of the testator: *In re Will of Robert Carr,* 121 Or. 574, 256 P. 390. Thus a strong prima facie case was established by the proponents of the will who have the burden of proof to show that the testator, at such time, had testamentary capacity. After the will was executed, it is significant that the testator took it to his safe deposit box in the First National Bank.

The following letter written by testator to his brother Ned and his wife in Ireland, dated December 28, 1939, about five months before the execution of the will, may speak of loneliness and sadness but certainly not of mental impairment:

"Dear Bro. Ned P. Barrett and wife:

I got no Xmas presents nor did I expect any but I expected a letter from you. On October 15 I mailed a letter to you. Perhaps Hitler got that letter. In that letter I told you that I gladly accepted your invitation to go home to Ireland. I would have gone then but because of Hitler's activities in the Atlantic Ocean I did not go. About a week ago England sunk and captured several of Hitler's capital ships. This wallop Johnny hit Hitler has stunned him so while Hitler is in this stupor it is a good chance for me to shoot this letter over to you. I want to know how you made out during the Xmas holy days. Of course you had a big fat goose for your Xmas dinner. I had no fat goose for Xmas dinner because geese are very scarce in Portland but there are plenty of hens and turkeys.

Our Xmas weather is very fine very little rain, no frost or snow. Tell Minnie Barrett and her grandchildren and their mother and John that I am in a hurry to return to them. I guess John has never been up to Barna. I will take John up to Barna up Shannons Locke and up to Mount Gordon then over to Guerys Wood. I know these places like a book. Oh yes, its the dearest place to me in all the world. Tell all our Barna neighbors that I am feeling fine and will be glad to see them all again after the war. Please God. Please answer right away.

Best wishes to all

DAN BARRETT

133 S. W. Clay, Cor. 2nd St.
Portland, Oregon
U.S.A."

■■ It is true that the testator, at the time of the execution of the will, was a sick man, but old age, debility, and sickness do not necessarily prevent the testamentary disposition of property if the testator has sufficient mental capacity to appreciate and comprehend the nature of the transaction in which he is engaged. If testator had sufficient mental capacity when the will was made, and subsequently loses such capacity, the validity of the will is not affected: Page on Wills (9th ed.) § 111. As said in *In re Will of Robert Carr,* supra, and quoted with approval in *In re Knutson's Will,* 149 Or. 467, 41 P. (2d) 793:

> "It is quite well settled in this state as to testamentary capacity that if a testator, at the time he executes his last will, understands the business in which he is engaged and has a knowledge of his property and how he wishes to dispose of it among those entitled to his bounty, he shows sufficient testamentary capacity, notwithstanding he may be advanced in age, sick, debilitated in body or in extreme distress."

Four days after the will was made, testator's physical condition became such that he was obliged to enter St. Vincent's hospital where he remained until his death ten days later. During his stay in the hospital he was often in a confused mental state and was a difficult patient to handle. Nevertheless, during this period, he consulted with his lawyer, Mr. Van Hoomissen, three times, arranging for the payment of his room rent at a hotel in the city and planning his own funeral. It was during these visits to the hospital that Barrett gave Mr. Van Hoomissen the key to his safe deposit box at the bank and told him where to find his will.

Appellant Thomas J. Barrett did not see testator within two months prior to the time the will was made. No witness on behalf of contestants saw testator during the four-day period of time after the will was made and before testator entered the hospital.

■ One of the expert witnesses, Dr. George K. Armen, a specialist in urology, who was positive that the testator did not have mental capacity thus to dispose of his estate, never saw testator and expressed his opinion solely in answer to a hypothetical question. Such evidence has slight probative value: *In re Shank's Estate,* 169 Or. 650, 126 P. (2d) 504; *Copenhefer v. Powers,* 137 Or. 145, 300 P. 505.

Dr. H. Minor Nichols, who testified that testator was not of sound mind and was incapable of making a will, based his opinion upon what he had observed about the testator while confined in the hospital. The same may be said about the opinion of Father Kellion who was chaplain at the hospital during the time in question. Neither of these witnesses had ever seen testator prior to the time he entered the hospital.

■ It may be that there were intervals of time while in the hospital that the testator did not have testamentary capacity but that is immaterial if, in fact, he had such capacity when the will was executed. After a careful consideration of the entire record, we are convinced that Daniel Barrett had sufficient mental capacity to make his will.

Attention has been directed to the salient facts affording a basis for our conclusion. We deem it unnecessary to set forth the evidence of statements claimed by the appellant Thomas Barrett, one of the chief beneficiaries under the 1936 will, to have been made to him by the testator. It is difficult to give much credence to

his testimony when we recall that while under oath, seeking appointment as administrator of his uncle's estate, he stated that the testator was of sound mind and disposing memory. Furthermore, appellant was paid for his services as administrator while acting in such capacity for about one year. When did appellant learn that his uncle was not of sound mind?

The decree of the circuit court in sustaining the will of Daniel Barrett, deceased, is affirmed.