Submitted on briefs March 24, affirmed May 12, 1925.

## RE ESTATE OF LAWRENCE K. MOORE.

## GRETA MOORE THOMPSON *v.* JESSIE M. MOORE ET AL.

(236 Pac. 265.)

**Wills—Owner may Dispose of Property as He Pleases.**

1. One may dispose of his property as he pleases, and may exclude children as beneficiaries, since children have no rights therein except those given them by the law after parents' death intestate, or those conferred upon them by will.

**Wills—Proponent has Burden of Proof on Issue of Insanity or Mental Incapacity.**

2. Burden of proof in contest of will on ground of insanity or mental incompetency is on proponent.

**Wills—Daughter Contesting Father's Will on Ground of Undue Influence had Burden of Proof.**

3. Daughter, contesting father's will on ground of undue influence of stepmother, had burden of proving such influence by the preponderance of the evidence.

**Wills—Evidence Held Insufficient to Prove Undue Influence.**

4. In daughter's contest of father's will, evidence *held* insufficient to prove that will was procured by undue influence of daughter's stepmother.

1. Presumption of undue influence from unnatural testamentary disposition, see notes in 7 **Ann. Cas.** 894; 6 **L. R. A. (N. S.)** 202; 22 **L. R. A. (N. S.)** 1024. See, also, 28 **R. C. L.** 67, 148.

2. See 28 **R. C. L.** 398.

3. See 28 **R. C. L.** 144.

**Wills—Rule as to Undue Influence Stated.**

5. A person may be influenced legitimately to make his will in a certain way, and is not unduly influenced unless the influence is unduly exerted to the extent that it entirely supersedes the desire or wish of the testator, and substitutes for it the purposes and intent of the one exercising the undue influence.

**Wills—Allowance of Costs in Will Contest Discretionary With Court.**

6. The allowance of costs in will contest is discretionary with court.

**Wills—Allowance of Costs and Disbursements of Will Contest Out of Estate Held not Abuse of Discretion.**

7. In daughter's contest of father's will, on ground of undue influence of stepmother, to whom the will left all of testator's estate, in which there was no contest as to items sought to be included as costs and disbursements, and no appeal under Section 570, Or. L., court, in upholding validity of will, did not abuse its discretion, under Section 567, in decreeing that costs and disbursements be paid out of the estate.

---

See (1) 32 **Cyc.** 677; 40 **Cyc.** 1057, 1079. (2) 40 **Cyc.** 1020. (3) 40 **Cyc.** 1150. (4) 40 **Cyc.** 1165. (5) 40 **Cyc.** 1144. (6) 40 **Cyc.** 1362. (7) 40 **Cyc.** 1364

From Multnomah: GEORGE TAZWELL, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. Arthur A. Goldsmith.*

For respondents there was a brief over the name of *Messrs. Joseph, Haney & Littlefield.*

BURNETT, J.—By his first wife, Lawrence K. Moore, the decedent involved herein, had a daughter, Greta, who is the contestant attacking his will. Her mother died when she was two and one-half years of age. Her father placed her in the care of her maternal grandmother, under promise that the latter

---

5.  See 28 **R. C. L.** 140.
6.  See 28 **R. C. L.** 407.

should be privileged to keep her until she had grown up. In about two years after his first wife died he married Jessie M. Elrod, the proponent of the will involved in this litigation. When the child was about nine years of age, in violation of his promise to her grandmother, the decedent took her into his own custody and entrusted her to the care of his then wife. The defendant and proponent here lived with the decedent from the time of their marriage, December 12, 1897, until his death on August 31, 1920. All the witnesses on both sides agree that their married life was very happy and that they were very affectionate toward each other. On June 23, 1917, he made the will here in question by which he bequeathed to his wife all his property of any kind wherever situated, with the proviso that if she died before his death, the property should be divided, one half to go to his only child, the contestant here, and the other moiety to a brother and sister of his wife, whom she had reared from childhood after the death of their mother. The daughter contests the will, not on the ground of insanity or want of mental testamentary capacity, but on the sole ground that it was the product of undue influence exercised over him by his second wife, her stepmother.

The bulk of the testimony was introduced for the purpose of showing that the stepmother sought in every way to injure his daughter in her character and reputation, was cruel to her and supplanted her in the affections of her father. The preponderance of the testimony shows that in the absence of the father the stepmother accused the child, then only about nine or ten years of age, of improper sexual relations with her own uncle, and at least on one occasion whipped her until she had admitted the charge. The testi-

mony of a disinterested witness, together with that of the contestant, is to the effect that the stepmother would tie the child's hands behind her, muffle her head with a towel, and then whip her with the buckle-end of a strap. According to the testimony, this happened on numerous occasions. The defendant categorically denies all that matter. The principal effort of the plaintiff is in the direction of showing that she was neglected and set aside, and that as one witness puts it, "she was an outsider inside the home."

In brief, we think, from a careful perusal of five huge volumes of testimony, totaling more than 2,300 pages, the preponderance of the evidence establishes three of the contentions of the contestant. First, a desire of the defendant to alienate from his daughter the affections of the testator; second, that she had the ability thus to influence the testator and make his will bend to hers, and third, that she had the opportunity to carry out that purpose. The ground of contention remaining is whether or not in fact the defendant had so unduly influenced the testator that the result was a will not the product of his own volition, but that of his wife.

1–3. It is an attribute of property that the owner thereof has the right to dispose of it as he pleases. It is his property. His children have no rights therein except those cast upon them by the law after his death intestate, or which he confers upon them by his will. If the contest is waged on the ground of insanity or lack of mental capacity to make a will, the burden is cast upon the proponent to establish by the preponderance of the testimony that the testator had testamentary capacity to make the will offered for probate. As stated, this is not that kind of a case.

The solid ground of contest the daughter urges is that her father was unduly influenced to make the will he did, and the burden is upon her to establish her contentions by the preponderance of the evidence. *Simpson* v. *Durbin,* 68 Or. 518 (136 Pac. 347); *Sturtevant's Estate,* 92 Or. 269 (178 Pac. 192, 180 Pac. 595); *Rice* v. *Rice,* 95 Or. 659 (188 Pac. 181).

Substantially, it appears that the immediate circumstances of the execution of the will were as follows: The testator was a man engaged in business in Portland, having an office in a building there, and one day he and some of his associates got to talking about the necessity of leaving a will. In pursuance of that conversation he announced his intention of making testamentary disposition of his property. He went out and bought a blank form, came back to his office, sat down at his own typewriter, and with his own hands framed the document in question. He then called in two witnesses and executed it in due form of law. This was in June, 1917, more than three years before his death. His wife was not present, and, according to her testimony, knew nothing of the execution of that will until long afterwards, and there are no witnesses to contradict her on that subject.

4, 5. The contention of the plaintiff is that the will is an unnatural one and hence should be set aside, but the law is, that courts cannot make a will for a testator. Neither is it for them to overturn what he has fashioned himself, providing he has testamentary capacity and that his own volition is not overpowered by that of another. The testimony shows that the daughter had grown to womanhood and had married a desirable husband, with whom she seems to be living happily, and was well

provided for in that respect. On the other hand, the testator and his second wife, the proponent here, had lived happily together for more than twenty years. At his death she was left alone and possibly without means of support except as bestowed upon her by her husband. Under such circumstances, he had the right, even if it were not his duty, to give her everything he possessed. The fact that she was affectionate towards him and, for all that, may have persuaded him to give her his property as he did, does not destroy such a will. A person may be influenced legitimately to make his will in a certain way. It is only when that influence is unduly exerted to the extent that it entirely supersedes the desire or wish of the testator and substitutes for it the purposes and intent of the one exercising the undue influence. No more is established here than the opportunity and will to influence the testator. As to whether she actually did influence the testator, or more than that, unduly influenced him, the proponent is at least entitled to the Scotch verdict of "not proven." In short, on that point, the contestant has failed to establish that important feature of the contest by a preponderance of the evidence.

6. While the Circuit Court established the will as that of the testator, it also decreed that the costs and disbursements should be paid out of the estate. The contestant appealed from the whole decree, and the proponent appealed from that part ordering the expenses to be paid out of the estate. The latter appeal presents the most difficult question of the two. It is a well-established principle that in all equity proceedings, contests of wills included, the matter of costs and disbursements is left to the discretion of the court. It is true also that in a great majority

of will contests that have come before this court, the costs have been paid out of the estate. Having in mind that the whole matter is discretionary with the court, we note a few circumstances that might legitimately influence that discretion. In the first place, the beneficiary is made the recipient of a gratuity. What she receives under the will is not earned by her as on the performance of a contract. It is a pure gift. On the other hand, the rule of law is, that the real property of a decedent descends to his children subject to the dower of his widow, and his personal property in like manner subject to certain allowances to the widow not necessary to be enumerated here, so that if nothing had been published by the testator in this instance, the daughter would have inherited the greater part of the property of her deceased father. This rule is stressed in a sense by the further provision of the law that in making a will the testator must either name or provide for each of his children, in default of which the will would be void as to the child omitted. Under these circumstances a child has at least a strong moral ground to expect a substantial share of the parent's property. In other words, the daughter in this instance had a strong moral right to participate in the fund arising upon the death of her parent. Many instances might be cited where an equitable fund is in litigation, that it is required to pay the expenses of that litigation. The matter of costs in such cases being in the discretion of the court, these circumstances are mentioned as properly influencing the discretion of the chancellor. Each case must depend upon its own circumstances.

7. We are not here taxing costs and disbursements, for that question is not before us. All we

are called upon to decide is whether or not the action of the Circuit Court shall be affirmed, and that is the matter upon which the proponent has appealed. It does not appear that any contest was made as to the items sought to be included as costs and disbursements. At least, there is no appeal before us growing out of the rules laid down in Section 570, Or. L. On the question involved, we cannot say that the Circuit Court abused its discretion vested in it by Section 567, Or. L. A late precedent on this question is *Johnson* v. *Helmer,* 100 Or. 142 (196 Pac. 385, 1115), in which Mr. Justice BEAN wrote the opinion of the court.

The result of a careful investigation of all the testimony and the precedents cited, and those examined by ourselves in addition thereto, is that the decree of the Circuit Court must be affirmed.

AFFIRMED.