Argued April 26, affirmed May 9, 1944

## In Re Cook's Estate
## COOK et al. *v.* COVERT
### (148 P. (2d) 790)

Before Bailey, Chief Justice, and Rossman, Kelly, Brand and Hay, Associate Justices.

*W. J. Prendergast, Jr.,* of Portland, for appellants.

*Elton Watkins,* of Portland, for respondent.

KELLY, J.   The purported will under attack herein was signed by decedent on the 5th day of July, 1941, in the presence of Robert L. Thomas, M. D., and Eva Rasmussen, who signed the document as attesting witnesses.   These parties and the attorney, who prepared the purported will, were in the office of Dr. Thomas at the time.

This case is distressingly disconcerting because it presents a bitter controversy between a brother and a sister, each of whom assails the character and veracity of the other.

At the outset we are confronted with a procedural question. This question arose because a trial was first had before Honorable John M. Pipes, Judge pro tempore, resulting in a decree sustaining the will and admitting the same to probate, after which, upon motion of contestant, an order was made setting aside that decree and ordering a new trial.

■ It is urged by proponent that because this proceeding is in the nature of a proceeding in equity, the

trial court should have reopened the case for additional testimony instead of granting a new trial; and that error was committed in granting a new trial. We think that the approved procedure in cases in equity is as suggested by proponent; but, as stated in *Mannix v. Harju, et al.*, the effect of the order granting a new trial was to vacate and set aside the decree which had been entered in the cause.

> "This left the case as it was before the entry of a decree and restored in the court its power to enter a proper decree or do any other act which the court could lawfully have done before the entry of the vacated decree." *Mannix v. Harju, et al.*, 125 Or. 258, 260, 266 P. 238.

The admission of the trial court of the testimony comprising the transcript before us did not prejudicially affect either or any of the parties hereto except by materially increasing the expense of the proceeding. This unnecessary expense we deplore, but no means of avoiding it now are at hand.

In this connection, it should be borne in mind that Judge Pipes did not participate in the second trial of this case and Judge Dobson, before the case was finally tried, was not familiar with the testimony given at the first trial. A complete transcript of the testimony heard by Judge Pipes was not offered for the consideration of Judge Dobson.

■ Among the affidavits in support of contestant's motion, to set aside the decree of Judge Pipes, was an affidavit by Emma Peutz which purported to state the testimony which that affiant would give if called as a witness. Because of her physical disability, she was not called to testify at the trial before Judge Dobson. Her testimony, if it conformed to her affidavit,

would have been cumulative only, and we think no error was committed in concluding the trial without hearing her testimony. Certainly no error could be ascribed because Judge Pipes, in granting contestant's motion, relied upon the statements in her affidavit.

■ These considerations impel us to hold that no prejudicial error was committed at the last trial in trying the case *de novo*.

■ The controlling question on the merits is whether or not in executing the purported will in suit Mrs. Florence Fuson Cook was acting under the influence and dominance of her son the proponent, Lawrence H. Cook.

A careful consideration of the record convinces us that at the time just mentioned the decedent was unduly influenced by the proponent.

At the risk of being prolix, the writer ventures to review the circumstances culminating in the making of the will in suit.

For the sake of clarity, Florence Fuson Cook will be termed the decedent, Lawrence H. Cook will be designated as the proponent, and his sister, Arvilla Cook Covert, will be referred to as the contestant. In this way the writer hopes to avoid the result of too many cooks.

The decedent was approximately 78 years old when she signed the will in suit. A consideration of the testimony of Dr. Jessie L. Brodie, who is the physician who attended her in her final illness, necessarily leads to the conclusion that at that time, namely, upon July 5, 1941, decedent was afflicted with senility.

On September 8, 1941, decedent called upon Dr. Brodie to ascertain the cause of dizziness which at

times afflicted her. At that time, according to the doctor's testimony,

"She had a moderately advanced case of what we call cardio-vascular renal disease, which is a condition which comes on with senility. A wearing out of the blood vessels, heart and kidneys,— arterio sclerosis."

On May 1, 1941, pursuant to a petition therefor by contestant, decedent was declared by the Probate Court of Multnomah County to be incapable of handling her property and a guardian of her estate was appointed by said court. This guardianship continued until her death on March 22, 1942.

At sometime before March, 1933, Mr. Leslie E. Crouch, an attorney practicing at Portland, prepared a will for decedent wherein decedent left only one dollar to her son, the proponent, and devised and bequeathed the balance of her estate to her daughter, the contestant.

Mr. Crouch remembered that the will just mentioned was executed before proceedings in the matter of the bankruptcy of proponent were instituted which occurred in March, 1933. Mr. Crouch also testified that sometime in 1932 or 1933, at the instance of decedent he prepared deeds conveying decedent's property to her daughter, the contestant. When those deeds were delivered, according to the testimony of Mr. Crouch, the contestant said:

"Now mamma, I want you to have the income from this property during your lifetime."

The conversation continued for a time followed by the execution by contestant of deeds conveying a life estate to her mother in the property which the mother

had conveyed in fee to the daughter, the contestant herein.

In 1935, Mr. Earl Bernard, an attorney of Portland, instituted suits at the instance of decedent against her daughter the contestant to recover the property conveyed by the deeds prepared by Mr. Crouch. One of these suits was filed in the State of Washington as it dealt with property in Yakima, Washington. The other suit was filed in Multnomah County, Oregon. The Yakima case resulted in a decree in favor of decedent. The other suit was settled by stipulation.

In March, 1939, Mr. Bernard filed a suit at the instance of decedent against her son the proponent for an accounting.

On May 10, 1939, at the instance of decedent, Mr. Bernard prepared a will which decedent executed, bequeathing one dollar to proponent, and devising and bequeathing all the rest and residue of her estate to contestant. In this will Mr. Bernard was named as executor. On the 15th day of March, 1940, deeds to the same property were also executed by decedent conveying it to contestant subject to a life estate in decedent. Later those deeds were the subject of another suit by decedent against her daughter the contestant herein.

In his testimony Mr. Bernard relates how he disposed of the will just mentioned:

"She" [decedent] "came into my office in the company of Mrs. Lawrence Cook, Lawrence Cook's wife. She sat down across the desk, and Mrs. Lawrence Cook right alongside of her, and Mrs. Lawrence Cook turned to her and said: 'Now mother I want you to tell Mr. Bernard how well

we are treating you.' And Mrs. Cook nodded, made some answer. And Mrs. Cook asked her several questions along that line to tell me what fine treatment she was getting. And finally Mrs. Lawrence Cook spoke up and said Mrs. Cook wanted to get the will which I had drawn for her. Mrs. Cook's condition was apparent to me, and it was apparent to me that another will was going to be drawn. I turned to Mrs. Cook and I said: 'You remember what you told me to do with that will when you gave it to me? You said for me to keep it until you died.' And she nodded her head. And with that they got up and walked out and I kept the will.

Q  What can you say from the observations you made at that time as to whether or not Mrs. Cook was then under the control and domination of anybody?

A  Well, she certainly did not impress me as a free agent that day. The whole picture was very apparent to me. That is why I did not give her the will. If she had been alone and at herself, and even though I had told her I would keep the will, I certainly would have given it to her.''

The suit for accounting against proponent filed at the instance of decedent by Mr. Bernard resulted in a decree and judgment in favor of decedent in the sum of $600.00. Proponent had interposed an alleged counterclaim in the sum of $5000.00. Thereafter, decedent lived with proponent and proponent received credit upon said judgment for the maintenance of his mother by arrangement with her guardian.

It will be noted that two wills and two sets of deeds were made by decedent to her daughter the contestant. Two suits were instituted by decedent against her daughter for the purpose of annulling those transactions.

It will also be noted that a suit for an accounting was instituted and prosecuted by decedent against her

son, and thereafter the purported will in his favor was signed by decedent.

No good purpose can be served by making a record here of the charges and countercharges between this brother, the proponent, and his sister, the contestant. Suffice it to say, they are virulent, vituperative and venomous. As an aside, it might indicate their nature to note that the wife of proponent expressed the opinion that at one time contestant threw acid upon her face.

It is apparent from the record that the brother attributes the litigation instituted and prosecuted by his mother against him to the malignant influence exerted over their mother by his sister. The sister, with emphasis, charges the same thing with reference to her brother's allegedly evil machinations and malicious misrepresentations concerning her as the controlling cause of her mother's court actions against her.

Thus the record is replete with evidence of undue influence exerted upon the aged mother by her belligerent and disputatious offspring.

The following witnesses testified in effect that decedent at various times had told them that decedent was afraid to take any course at variance with proponent's wishes; that he was domineering and insistent upon his wishes being obeyed: Mrs. Oyte Baker, Mrs. Anna Penney, Mrs. Emma Peutz, Mrs. Emma B. Lochridge and Mr. William L. Josslin.

The following witnesses gave testimony concerning alleged statements to them by decedent to the effect that contestant was dictatorial and imperious in her demands upon decedent: Mrs. Eva Rasmussen, Mrs. Karla Cook, wife of proponent, and Mrs. Margaret Geiger.

As stated, the record indubitably discloses a vacillating and changeable course by decedent first favoring contestant to the exclusion of proponent; then instituting and prosecuting litigation against contestant to effect an annullment of such course; then again reinstating the contestant as the sole beneficiary of her bounty; then again suing in the courts to oust contestant from the position of favorite; and then at last, while definitely afflicted with senility, or as Mrs. Goode testified, having reached the stage of senile decay, signing the document here sought to be declared to be her last will and testament by which contestant would receive a piece of real property of only nominal value and proponent would receive practically the rest of decedent's estate.

Besides being under mental and physical disability when the purported will in suit was signed, decedent was under the legal disability of having a guardian of her estate duly appointed by the probate court.

No one reading this record, could think of decedent while in her normal state of health other than as a well meaning woman with strong civic, moral and religious views; but the disappointment experienced in her marital state resulting in an estrangement from her husband and a decree of divorce, together with the lamentable death of her older son while in the service during the first world war, and a feud continuing at least for a decade between her younger son and her daughter, could not fail to weaken and impair, if not entirely destroy, her ability to resist the dominance and insistence of the offspring who at the time was in the closest and most intimate proximity to her. Added to these distressing circumstances and perhaps

as a contributing cause, senility overtook her before the purported will in suit was signed.

Proponent cites *In re Knutson's Will,* 149 Or. 467, 41 P. (2d) 793; *Wayne v. Huber,* 134 Or. 464, 291 P. 356, 294 P. 590, 79 A. L. R. 1427; and *Re Estate of Moore,* 114 Or. 444, 236 P. 265. Each of these cases differs from the case at bar in that none of them presents the feature of a vacillating course by any of the respective decedents such as is shown on the part of the decedent in the instant case.

In *Wayne v. Huber,* supra, no suggestion of senility or other mental weakness is shown; and in *Re Estate of Moore,* supra, not only is there no suggestion of senility on the part of the testator, but it is shown that he, himself, typed the questioned will.

The learned trial judge had the advantage of seeing and hearing the witnesses and observing their manner upon the stand, an advantage denied to those who have only the typewritten pages before them.

These considerations impel us to affirm the decree from which this appeal has been prosecuted; and it is so ordered.

It is further ordered that the costs and disbursements on this appeal be paid from the funds of the estate.